## WILLIAM PIERCE COWLES v. CITY OF MINNEAPOLIS.[1]

February 19, 1915.

Nos. 19,005—(224).

**Contract — breach — finding sustained by evidence.**
> The evidence has been examined and found sufficient to sustain the findings of the trial court.

Action in the district court for Hennepin county to recover $1,-335.18, balance due upon a written contract for services. The case was tried before Hale, J., who made findings and ordered judgment in favor of plaintiff in the sum of $1,155.12. From the judgment entered pursuant to the order for judgment, defendant appealed. Affirmed.

*C. J. Rockwood,* for appellant.
*Arthur M. Higgins* and *Charles B. Elliott,* for respondent.

TAYLOR, C.

Defendant being about to construct four re-inforced concrete bridges over canals connecting the lakes in the western part of the city, entered into a contract with plaintiff, a civil engineer, whereby plaintiff agreed to make the detail drawings for the bridges, and, among other things, agreed to "inspect and supervise the materials and work during the course of construction, so as to secure the best results, mechanically and architecturally." Defendant let the contract for constructing the bridges to the Security Bridge Co., and provided in the contract that plaintiff should supervise the work,

[1] Reported in 151 N. W. 184.

and that all work and material should be satisfactory to him, and that his decision with reference thereto should be final. The contract provided that the abutments and wing walls for the bridges should rest upon piling driven until each pile would carry a load of 15 tons, —that fact to be determined according to an engineer's formula set forth in and made a part of the contract. After the bridges were finished, one wing wall at each end of the bridge last completed settled so that a crack appeared between this wall and the abutment to which it adjoined, and these two walls were taken down and rebuilt at a substantial additional expense. When these walls were taken down, it was discovered that the piles upon which they rested, instead of having been driven until each pile would sustain a load of 15 tons, had only been driven until they would sustain loads varying from seven to thirteen tons and no more. The defects in the wall resulted from the failure to comply with this requirement of the contract.

Defendant had paid plaintiff approximately four-fifths of the amount he was to receive for his services before discovering the defects in the work, but refused to pay the remainder thereof, on the ground that he had failed to supervise and inspect the work as required by his contract. He brought this suit to recover the balance unpaid, and alleged that he had fully performed his contract in all respects. Defendant alleged that he had failed to perform his contract, in that he had not secured the proper driving of the piles in question, and had not required the contractor to drive the full number of piles indicated upon the plan made a part of the contract with the bridge company. By agreement the cause was tried before the court without a jury. The court found that plaintiff had performed all the terms and conditions of his contract, and that the defects in question were not due to any "fault, negligence or omission" on his part, and rendered judgment in his favor for the amount claimed. Defendant appealed from the judgment, and presents the single question as to whether the evidence sustains the above finding.

Plaintiff was an engineer and was employed as such. In performing the work which he undertook, it was his duty to exercise such care, skill and diligence as men engaged in that profession or-

dinarily exercise under like circumstances. He was not an insurer that the contractors would perform their work properly in all respects; but it was his duty to exercise reasonable care to see that they did so. The work was progressing in different places at the same time. A large number of piles had been driven before those in question, and apparently had been properly driven. The latter part of the work was hurried to make ready for a civic celebration.

The printed record contains over 450 pages and we shall make no attempt to recapitulate the evidence. It shows that plaintiff did not know the manner in which the piles in question were driven, and failed to discover that they had not been driven as required by the specifications. Records of the driving of the piles had been kept by a city employee, until those in question were reached, but were not kept of those in question because other duties called this employee elsewhere. There is testimony to the effect that plaintiff inspected the various parts of the work two or three times a day; that he endeavored to have records kept of the driving of all the piles; that he was not present when those in question were driven; that he inquired of the men who drove them how they had been driven, and was assured that they had been driven to the extent required; that these men were of good repute and competent to determine such questions, and that their previous reports had been correct and reliable. By the contract between the city and the bridge company, the city agreed to pay the company the actual cost of doing the work, and, in addition thereto, 15 per cent of such cost as profit, with a provision that the entire expense should not exceed a stipulated sum. The city also furnished the piles. Under such a contract there was little motive to slight the work. The testimony of experts was to the effect that it was proper and customary for an engineer to rely upon such information as plaintiff relied upon. In view of all the facts and circumstances shown by the evidence, the question as to whether plaintiff was derelict in failing to discover that the piles had been improperly driven, was a question of fact for the trial court; and that court having found the fact in plaintiff's favor this court cannot interfere with such finding.

Plaintiff had prepared the original plans and specifications for the

bridge, but at defendant's instance had subsequently prepared some modified plans. Apparently the original plans as well as most of the modified plans indicated eight piles for each wing wall, but one of the modified plans indicated eleven piles for such walls. This particular modified plan was made a part of the contract with the bridge company. In answer to an inquiry by the contractor, plaintiff directed him to drive eight piles under each wing wall and only eight were driven. There is evidence to the effect that eight properly driven piles were sufficient; that only eight were intended to be used; that only eight were indicated on the plans in use upon the work; that, without instructions so to do, a draughtsman had marked three additional piles upon a plan prepared merely for use in explaining to the park board a proposed modification of the bridge itself for the purpose of lessening the expense, and that without plaintiff's knowledge this particular plan had been made a part of the contract with the bridge company, instead of the plan which he had prepared and supposed had been used for that purpose. In the light of the attending circumstances, plaintiff's failure to require the contractor to drive the three additional piles under these wing walls is not conclusive proof that he violated the duty which he owed to defendant.

Without adverting to many other facts bearing upon the questions presented, it is sufficient to say that an examination of the entire record leads to the conclusion that the evidence is sufficient to sustain the finding of the trial court, and that this court would not be justified in vacating such finding.